# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>DELUXE BUILDING SOLUTIONS, LLC,<br><br>                      Alleged Debtor. | Case No.: 5:21-bk-00534-HWV<br><br>Chapter 7 |

### ALLEGED DEBTOR, DELUXE BUILDING SOLUTIONS, LLC'S SUPPLEMENTAL MEMORANDUM OF LAW IN RESPONSE TO JOINDER STATEMENT OF ANDREW W. HAYES AND IN SUPPORT OF ITS ANSWER AND MOTION TO DISMISS THE INVOLUNTARY PETITION FOR LACK OF JURISDICTION

**I.**  **INTRODUCTION**

On September 13, 2021 the alleged debtor, Deluxe Building Solutions, LLC ("Deluxe"), filed its Memorandum of Law (the "Memorandum" [Dkt. No. 129]) in support of Deluxe's Answer to the involuntary petition, and Motion for the entry of an order dismissing with prejudice the Involuntary Petition filed in this case as a bad faith filing and for additional relief (the "Motion to Dismiss"). The hearing on the Motion to Dismiss was set for the morning of September 23, 2021. On the morning of September 23, 2021, just before the start of the hearing, Andrew W. Hayes filed to join as an additional petitioning creditor.[1]

Deluxe, by and through its undersigned counsel, files this Supplemental Memorandum of Law in opposition to Hayes' joinder as a petitioning creditor.

---

[1] The evidentiary hearing commenced on September 23, 2021 has been continued to December 15 and 16, 2021. [Dkt. 141]

Under state contract law, Hayes (and the other individual petitioning creditors) waived the right to commence this case, and their contractual waiver is enforceable under Bankruptcy law.

In effect, this involuntary bankruptcy and this Court's jurisdiction over same rests on issues of contract interpretation under state law. If Hayes, Wieler and Labanara contractually waived their right to file the involuntary petition against Deluxe, they could not qualify as petitioning creditors; and, without them, the Involuntary Petition fails. Further, as set forth in Deluxe's Memorandum of Law and explained herein, the debts claimed by Taylor & Peterson and Superior Controls' are not debts of Deluxe and, pursuant to the Sync USA Operating Agreement, are actually the obligations of Hayes and Wieler. Consequently, Taylor & Peterson and Superior Controls also do not qualify as petitioning creditors against Deluxe.

## II. ARGUMENT

### A. Standard Of Review

A court may dismiss a Chapter 7 case "only after notice and a hearing and only for cause." 11 U.S.C. §707(a). Cause for dismissal exists where the petitioners lack authority to file a bankruptcy petition. *Price v. Gurney,* 324 U.S. 100, 106 (1945) (stating that, if a court finds a lack of authority to file a bankruptcy petition, "it has no alternative but to dismiss the petition"); *see*, *e.g.*, *In re ComScape*

*Telecommunications, Inc.*, 423 B.R. 816, 829 (Bankr. S.D. Ohio 2010) (interpreting "cause" under §1112(b) and holding that "[i]t is well established that lack of authority to commence a bankruptcy case constitutes cause for dismissal").

### B. Waivers Of The Right To File A Bankruptcy Petition Are Enforceable

A provision in a contract waiving a party's right to file a bankruptcy action or limiting that party's rights in future bankruptcy actions are generally enforceable. Courts enforcing such provisions make a distinction between waivers of the right to file bankruptcy and parties voluntarily agreeing among themselves that authority to file a bankruptcy shall not exist absent satisfaction of certain conditions precedent. While the Bankruptcy Code contains a number of so-called "*ipso facto*" provisions that invalidate certain contractual provisions for a debtor to waive its right to seek relief under the Bankruptcy Act as contrary to federal public policy, *see e.g.*, *In re Gen. Growth Props., Inc.*, 409 B.R. 43, 49 (Bankr. S.D.N.Y. 2009),[2] bankruptcy law is equally clear that state contract and corporate law govern the process for determining whether a bankruptcy filing was duly authorized. *See*,

---

[2] *See also* 11 U.S.C. §365(b)(2)(B) ("Paragraph (1) of this subsection [dealing with contract defaults] does not apply to a default that is a breach of a provision relating to . . . the commencement of a case under this title" (alteration added)); 11 U.S.C. §365(e)(1)(B) ("Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on the commencement of a case under this title."); 11 U.S.C. § 541(c) ("An interest of the debtor in property becomes property of the estate . . . notwithstanding any provision in an agreement, transfer instrument, or applicable non-bankruptcy law…that is conditioned on the insolvency or financial condition of the debtor, [or] on the commencement of a case under this title…").

3

101046159.1

Case 5:21-bk-00534-HWV    Doc 146    Filed 11/29/21    Entered 11/29/21 15:55:38    Desc
Main Document    Page 3 of 16

*e.g.*, *In re Simplexity, LLC,* No. 14-01569, 2017 WL 2385404 (Bankr. D. Del. June 1, 2017) (citing *TravelCenters of Am., LLC v. Brog,* No. 3516, 2008 WL 1746987, at *1 (Del. Ch. Apr. 3, 2008) for the proposition that, under Delaware law, "limited liability companies are creatures of contract" and, thus, drafters enjoy broad freedom in creating bylaws); *see also In re Grupo Dos Chiles, LLC*, No. 1447, 2006 WL 668443, at *2 (Del. Ch. Mar. 10, 2006).

Provisions in LLC operating agreements that require certain approvals or unanimous consent by managers or members before filing a bankruptcy petition are frequently enforced. For instance, in *In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Or. 2003), the LLC operating agreement required 75% member approval for certain "major decisions." Although bankruptcy was not specifically listed as an event triggering the "major decision" clause, the bankruptcy court concluded that a bankruptcy filing fell within the scope of that provision and, thus, imposed a 75% requirement. *Id.* at 380-81.

In *In re DB Capital Holdings*, Nos. CO-10-046, 10-23242, 463 B.R. 142 (Table), 2010 WL 4925811 (B.A.P. 10th Cir. 2010), the debtor was a manager-managed LLC. The members of the debtor subsequently restricted the company's ability to file a bankruptcy petition by amending its operating agreement to include an anti-bankruptcy provision. A few years later, the manager of the debtor filed a voluntary bankruptcy petition on the debtor's behalf for purposes of defeating a

4

Case 5:21-bk-00534-HWV    Doc 146    Filed 11/29/21    Entered 11/29/21 15:55:38    Desc
Main Document    Page 4 of 16

state court receivership. One of the members did not consent to the filing and sought to dismiss it as unauthorized based on the anti-bankruptcy provision, despite arguments to the contrary that such a provision should be invalidated on public-policy grounds because the provision was included at a lender's behest. The bankruptcy court enforced the contractual restriction and dismissed the case. The Tenth Circuit affirmed on appeal, concluding that the terms of the operating agreement could prohibit the limited liability company from seeking bankruptcy relief. *Id.* at *5.

Other courts have reached similar conclusions in analogous situations. *See*, *e.g.*, *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 826-27 (Bankr. N.D. Tex. 2006) (enforcing operating agreement that required unanimous member consent for the filing of a voluntary bankruptcy case); *In re 210 West Liberty Holdings, LLC*, No. 08-677, 2009 WL 1522047, at *5 (Bankr. N.D. W.Va. May 29, 2009) (provision that "all decisions" be made by majority vote was sufficient to allow bankruptcy filing over member objection because the objecting member's approval was not necessary to constitute a majority); *In re Ice Oasis, LLC*, No. 08-31522, 2008 WL 5753355, at *3 (Bankr. N.D. Cal. Nov. 7, 2008) (in two-member LLC with 50/50 ownership, both members were required to approve the bankruptcy filing because the operating agreement provided for "all decisions" to be approved by a majority).

5

### C. Hayes Contractually Waived The Right To File The Involuntary Petition Against Deluxe Pursuant To the Sync USA Operating AGREEMENT

Hayes and Wieler waived their right to file the involuntary petition in this case by voluntarily agreeing in the Sync USA Operating Agreement (the "Operating Agreement") to restrict the right of members <u>and</u> managers to initiate certain actions against Sync USA, its other members (which include Deluxe) and any other manager. A copy of the Operating Agreement was attached to Deluxe's Motion to Dismiss and can be found at Docket Number 121-2. The restriction broadly precluded managers, like Hayes and Wieler, from seeking injunctive relief unless certain steps were taken <u>prior to initiating the action seeking relief</u>. To wit:

> Section 10.4: "No Member or Manager may initiate an action seeking a Temporary Restraining Order or a Preliminary Injunction against the Company, any other Manager, or any other Member unless such person has complied with the dispute resolution procedure set forth in Section 10.1 hereof"

The involuntary petition filed in this matter falls within this restriction. Upon the filing of an involuntary petition, the automatic stay provision of Section 362 of the Code is triggered. 11 U.S.C. §§303(h), 362(a). The automatic stay is comparable to an automatic injunction. *See*, *e.g.*, *Whittaker v. Phila. Elec. Co.*, 92 B.R. 110, 117 (E.D. Pa. 1988). "When a bankruptcy petition is filed, an automatic stay operates as a self-executing injunction." *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354-55 (5th Cir. 2008).

Therefore, Hayes and Wieler were prohibited from filing the involuntary

petition because it is an "action" which triggers the automatic stay injunction against a "Member" (Deluxe), and effectively results in an injunction via the order for relief, without first complying with the dispute resolution procedure set forth in Section 10.1 of the Operating Agreement. Section 10.1 provides in relevant part:

> In the event of any dispute, controversy or claim …the parties to such controversy or claim shall first use their reasonable best efforts in good faith to resolve such dispute among themselves by sending written notice to each other Member and the Managers (or any of them) setting forth in reasonable detail the nature of such dispute, the resolution requested, and the damages which would result if a resolution were not affected (the "Dispute Notice"). Each party and the Managers receiving a Dispute Notice shall meet at the principal office of the Company within ten (10) calendar days of the date of such Dispute Notice at a date and time selected by the Managers and duly noticed to each Member and Manager …(the "Dispute Resolution Meeting"). The Parties shall confer at the Dispute Resolution Meeting, and will use good faith efforts within the twenty (20) days after the Dispute Resolution Meeting to resolve the dispute (the "Dispute Resolution Period").

Notwithstanding the express requirements quoted above, at no time did Hayes or Wieler send Deluxe (or any other required person) a Dispute Notice. Nor did they schedule any Dispute Resolution Meetings or follow any of the other Dispute Resolution Procedures which were contractual pre-requisites to filing an the voluntary petition in this case against any other Member—*i.e.*, Deluxe.

Having failed to comply with the Dispute Resolution prerequisites, the Operating Agreement dictates that Hayes and Wieler consent to the dismissal of the improperly initiated action and waive the right to challenge or appeal from such dismissal. As per Section 10.4 of the Operating Agreement:

> Should a party initiate an action seeking a TRO and/or a preliminary injunction in violation of the notice requirement provided for in this Section 10.4, then, upon a motion or other application brought by the party against whom the action seeking a TRO and/or a preliminary injunction has been brought without the prior requisite notice set forth in this Section 10.4, ***the court shall deny said motion for a TRO and preliminary injunction with prejudice, and the party initiating the action without the requisite notice hereby specifically consents to same, and waives all right to challenge same or appeal therefrom to the extent permitted by law***. (emphasis added).[3]

As such, and as mandated by Sections 10.3 and 10.4 of the Operating Agreement, because Hayes and Wieler initiated the involuntary bankruptcy—which is an "action" that triggered the automatic stay injunction against Deluxe and would lead to other injunctive-like relief—without first following the requisite Dispute Resolution Procedure, they waived their right to do so. They also agreed that, "upon a motion or other application brought by the party against whom the action … has been brought without the prior requisite notice . . . the court shall [dismiss same]…and the party initiating the action without the requisite notice hereby specifically consents to same, and waives all right to challenge same or appeal therefrom to the extent permitted by law.*"* Deluxe's Motion to Dismiss is

---

[3] Section 10.3 entitled, "Effect of failure to follow the Dispute Resolution Procedure," further provides: "In the event a party shall have failed to follow the dispute resolution procedure [and]… has thereafter brought an action … then upon a motion brought by the Managers or any other party to such dispute, the action initiated by the non-complying Member, Operating Manager or Manager, shall be dismissed with prejudice… and each Member and Manager hereby specifically consents to same, and waives all right to challenge same or appeal therefrom to the fullest extent permitted by law." Sections 10.3 and 10.4 plainly applied to Hayes and Wieler. *See* Section 1.2 of the Operating Agreement ("References to a Member that is not a natural person shall also be deemed to include such Member's Principals and any other person affiliated with such Member who is also a Manager or an employee of the Company or its Subsidiaries").

8

that motion.[4]

In addition, Hayes and Wieler both agreed in the Operating Agreement that certain acts, which are defined therein to constitute "Cause," are prohibited and, if undertaken, are *ultra vires* and a breach of the Agreement. For such *ultra vires* acts, a Manager, such as Hayes, and a Company Executive, such as Wieler, can be removed from those positions[5] and the Member associated with them, SyncPark LLC ("SyncPark"), is automatically deemed to have withdrawn from the LLC—which triggers a right for the non-defaulting member to purchase the defaulting member's interest per a formula price as set forth in Section 3.21.[6]

---

[4] Not only did Hayes and Wieler fail to *initiate* any Dispute Resolution Procedures prior to filing the involuntary petition, they also failed to comply with their obligations to participate in good faith with respect to a Dispute Resolution Notice and Demand for Indemnification sent by Deluxe to each of them on March 23, 2021, a copy of which is attached hereto as Exhibit "1" (the "Deluxe Dispute Notice"). Pursuant to the Deluxe Dispute Notice, the Dispute Resolution Meeting was scheduled for Friday March 26, 2021 at 2:00 PM, and because this was during the COVID pandemic, the notice gave the recipients the choice to meet in person at the Company's offices or by Zoom. Neither Hayes nor Wieler appeared or participated. At least Weiler, through his counsel, was placed on notice of the potential import of the Dispute Resolution Meeting and its effect on the rights of the parties, including expressly their ability to file an involuntary bankruptcy against Deluxe.

[5] *See* Operating Agreement §§ 6.3(f) ("Any Manager may be removed from the Board for Cause by the majority vote of the Members or as reasonably determined by the other Manager"), 6.1(c) ("If a Company executive has committed any act constituting 'Cause', then any Manager may, upon a reasonable written determination that a Company Executive has committed a 'Cause' act, unilaterally remove such Company Executive for Cause, and substitute any other person reasonably selected by said Manager to replace such Company Executive").

[6] Deluxe asserts that this actually happened on August 19, 2020 with the *ultra vires* issuance of an unauthorized purchase order in favor of Superior Controls, and that Deluxe has exercised its right to buy the SyncPark interest as of that date. Pursuant to Section 3.21 of the Operating Agreement: "In the event a Member has Withdrawn (or has been deemed to have Withdrawn) …then in such event the Company may (but shall not be obligated to), … elect to repurchase from such Member…such Member's Units at a price equal to the lower of (A) the Original Cost or cash

9

Pursuant to Section 1.2 of the Sync USA Operating Agreement:

"Cause" means, with respect to a Member, Operating Manager, Principal or a Manager, a good faith determination by the Board … that:… (ix) such person has voluntarily filed a petition in Bankruptcy…

By voluntarily filing the involuntary petition against Deluxe, Hayes and Wieler breached the Sync USA Operating Agreement for Cause and the same is deemed an "ultra vires" act. In addition to other remedies under the Operating Agreement, a member or manager who commits an *ultra vires* act is required to indemnify the other members and managers for costs, expenses and damages resulting from such action.[7]

Based on the foregoing, neither Hayes nor Wieler had a right to, and in fact, waived their right to file the involuntary petition against Deluxe, consented to this Court dismissing same with prejudice, waived all rights to challenge same or appeal therefrom to the extent permitted by law, and must indemnify Deluxe "for any costs, damages or other expenses incurred by [Deluxe]…as a result of the

---

contributions made to the Company of such Units or (B) Seventy Five percent (75%) of the Fair Value of such Units as reasonably determined by the Board."

[7] Pursuant to the final paragraph of Section 6.8: "Any Manager or any Member who shall cause an ultra vires act to be undertaken shall (i) be obligated to indemnify the Company, each other Manager and each other Member for any costs, damages or other expenses incurred by the Company, any Subsidiary, any other Manager and/or any other Member as a result of the unauthorized action of such Manager, Member, its Principals or any officer, employee or agent of such Member; and (ii) such Member (or the Member who is affiliated with such Manager, or who designated such Manager) shall automatically be deemed to have withdrawn from the Company. To the fullest extent permitted by Law, any attempted action in contravention of this Section 6.8 shall be null and void ab initio and not binding upon the Company, any Subsidiary, any other Member and/or any other Manager."

unauthorized action."[8]

>    D. **<u>Nothing About Hayes' Joinder Can Save The Defective Claims Of Taylor & Peterson And Superior Controls, Because Hayes—Like Wieler—Was Not Authorized On Behalf Of Deluxe (Or Sync USA) To Incur Any Debt</u>**

The only executive level persons employed by Deluxe and Sync USA who had any business dealings with Taylor & Peterson and Superior Controls were Hayes and Wieler. As such it was Hayes and Wieler (and no other employees of Deluxe or Sync USA) who were the sole source if information communicated to Taylor & Peterson and Superior Controls. As the Company Executives of Sync USA Hayes and Wieler: (a) established the scope of work to be provided by each of those two engineering firms; (b) determined the deliverables; (c) determined the schedule; (d) negotiated and agreed to financial terms; and (e) it was Hayes and Wieler—and no other person—who instructed Taylor & Peterson and Superior

---

[8] Petitioner Labanara similarly contractually waived his right to initiate any claim against Deluxe as part of his employment agreement, a copy of which is attached hereto as Exhibit "2". Pursuant to Section 14 of the agreement, Mr. Labanara agreed that:

> During Employee's employment with Company, and during the one year period immediately following termination of Employee's employment with Company, Employee: (i) will not, directly or indirectly… commence a claim or take any action against any Company Party.

Mr. Labanara's employment with Deluxe ended on February 8, 2021 and the original petition was filed on March 18, 2021— within the one year prohibition period following termination of Mr. Labanara's employment. By filing the involuntary petition in this case, Mr. Labanara "commence[d] a claim and [filed an] action against" Deluxe in violation of his express agreement to not do so. In the event of such a breach, Labanara agreed that Deluxe was entitled to injunctive relief and specific performance to cease or correct the breach and to indemnification for all losses and damages sustained as a result of his wrongful action. Exhibit 2 at §§ 12 and 15.

Controls who they should invoice.

Certainly Taylor & Peterson and Superior Controls were concerned that they get paid, but they had no reason to care whether they were paid by Sync USA, Deluxe or any other person. If Hayes and Wieler instructed them to invoice Sync USA, Taylor & Peterson and Superior Controls would have invoiced Sync USA. If Hayes and Wieler instructed them to invoice XYZ Co., they would have invoiced XYZ Co. The relationship was with Hayes and Wieler—not Deluxe—and they relied on Hayes and Wieler to properly instruct them on who should be invoiced for the work they were undertaking for the Sync USA Automated Parking System.

There is no dispute that the work done by Taylor & Peterson and Superior Controls was work in connection with the SyncPark Automated Parking System being designed by Sync USA. There is also no dispute that Hayes and Wieler instructed Taylor & Peterson and Superior Controls to invoice Deluxe. Yet, Hayes and Wieler were not authorized to incur the liabilities to Taylor & Peterson and Superior Controls on behalf of Deluxe or even Sync USA. Significantly, both the incurring of those obligations, as well as instructing Taylor & Peterson and Superior Controls to invoice Deluxe with respect to those obligations, were *ultra vires* acts by Hayes and Wieler that triggered their indemnification obligations to Deluxe. As discussed below, Hayes and Wieler have contractually undertaken "sole responsibility" to pay the claims of Taylor & Peterson and Superior Controls,

12

101046159.1

which are now the obligations of Hayes and Wieler, for which Deluxe is entitled to specific performance.

> **E.  Hayes And Wieler as the Company Executives Wrongfully Instructed Taylor & Peterson And Superior Controls To Invoice Deluxe**

Pursuant to Section 6.1 of the Operating Agreement, as the "Company Executives," Hayes and Wieler, were:

> responsible for the day-to-day operations of [Sync USA] and the implementation of, and execution of, the business plans of [Sync USA], at the expense of [Sync USA], in each case pursuant to and in accordance with the Approved Budget as in effect from time to time prepared by the Company Executives and approved by the Board.

Hayes and Wieler have admitted in three separate writings, and Wieler admitted in his September 23rd testimony, that the obligations due to Taylor & Peterson and Superior Controls was for work done for Sync USA. The extent of Hayes and Wieler's authority to incur the same is a matter of contract under state law. The Operating Agreement provides at Section 3.12:

> the debts, obligations and liabilities of [Sync USA] and its Subsidiaries, whether arising in contract, tort or otherwise, ***shall be solely the debts, obligations and liabilities of [Sync USA] or a Subsidiary, and no Manager, Member, Principal or their respective Affiliates (collectively "Covered Person") shall be obligated personally for any such debt, obligation or liability*** of [Sync USA] or a Subsidiary …

As such, as the work of Taylor & Peterson and Superior Controls was for Sync USA, and the obligation to pay for that work is an expense of Sync USA, the expense is a debt of Sync USA and cannot be a debt, obligation or liability of

13

Deluxe, as a member of Sync USA. To that end, Section 7.1 of the Operating Agreement titled "Limited Liability" further provides:

> the Members will not be personally liable for any obligations of the Company and contributions to the Company in excess of their respective Capital Contributions.

This is true regardless of any claims related to Deluxe's alleged funding responsibilities for the prototype garage. Such expenditures by Sync USA still had to be authorized.

It should also be apparent from the unambiguous language of the Deluxe Procurement Manual—which they were contractually obligated to follow pursuant to Section 5.06 of their respective employment agreements—that neither Hayes nor Wieler were authorized to create any liability of Deluxe that was not in a Deluxe Approved Budget, nor authorized by Mr. Frydman if same exceeded $25,000. Again, the obligations to Taylor & Peterson and Superior Controls were neither included in any Deluxe Approved Budget nor authorized by Mr. Frydman. As such, Hayes and Wieler had no authority to incur same on behalf of Deluxe.

### F. Hayes And Wieler Have Contractually Agreed To Be Solely Responsible For The Debts Due Taylor & Peterson And Superior Controls

As a result of Hayes and Wieler's breaches of the Operating Agreement as above set forth, they are contractually obligated to indemnify Deluxe and have contractually agreed to be "solely responsible for the expenses incurred" in favor of Taylor & Peterson and Superior Controls. Since the obligations to Taylor &

14

101046159.1

Case 5:21-bk-00534-HWV    Doc 146    Filed 11/29/21    Entered 11/29/21 15:55:38    Desc
Main Document    Page 14 of 16

Peterson and Superior Controls are now the sole obligations of Hayes and Wieler, the expenses cannot be the obligations of Deluxe and, thus, Taylor & Peterson and Superior Controls cannot qualify as petitioning creditors.

### III. CONCLUSION

Based on the foregoing, which establishes the lack of a single qualifying petitioner in this matter, Deluxe respectfully requests that the Court dismiss the Involuntary Petition with prejudice. In addition to the relief requested in its Motion to Dismiss the involuntary petition as a bad faith filing, Deluxe requests that this Court order any further relief as it deems just.

Dated: November 29, 2021

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

  */s/ Casey Alan Coyle*
  Mark S. Stewart (ID No. 75958
  Casey Alan Coyle (ID No. 307712
  213 Market Street, 8th Floor
  Harrisburg, PA 17101
  (717) 237-6000
  mstewart@eckertseamans.com
  mcoyle@eckertseamans.com

  *Counsel for Deluxe Building Solutions, LLC*

15

101046159.1

Case 5:21-bk-00534-HWV    Doc 146    Filed 11/29/21    Entered 11/29/21 15:55:38    Desc
Main Document    Page 15 of 16

# CERTIFICATE OF SERVICE

The undersigned counsel to Deluxe Building Solutions, LLC, hereby certifies that I have caused the foregoing **SUPPLEMENTAL MEMORANDUM OF LAW** to be electronically served upon the following via the Court's CM/ECF system by filing the same this 29th day of November, 2021.

Harry D. Lewis
hlewis@quickjustice.law
*Attorney for Petitioning Creditors*

Gregory Benjamin Schiller
Gregory.B.Schiller@usdoj.gov
*US Department of Justice*
*Office of the US Trustee*

Andrew W. Hayes
4 South Stanwich Road
Greenwich, CT 06831

Jill M. Spott
jspottesq@sheilslaw.com
*Attorney for Robert P. Sheils Jr. (Trustee)*

Dated: November 29, 2021                    Respectfully submitted,

/s/ Casey Alan Coyle